## THE VOLUNTEER.

## THE SOUTH JACKSONVILLE.

(District Court, S. D. Florida. April 19, 1922.)

No. 1299.

1. **Collision** ⬿98—No duty to sound whistle, when similar lights shown.

There was no duty resting on the master of either of two vessels to sound his whistle in a river, when each vessel showed the same colored light.

2. **Collision** ⬿93—Ferryboat held at fault in colliding with tug and barge.

Pilot of ferryboat, after leaving slip to cross river, *held* at fault in not seeing the lights of a tug and barge, with which it collided.

In Admiralty. Libel by the Savannah-New York Transportation Company against the tug Volunteer and the ferryboat South Jacksonville, in which a cross-bill was filed by the Jacksonville Ferry & Land Company, owners of the ferryboat, against the tug Volunteer and the barge Chehaw. Decree against the ferryboat in favor of libelant, and dismissing the libel against the tugboat and barge.

W. M. Toomer and Stanton Walker, both of Jacksonville, Fla., and Hitch & Denmark, of Savannah, Ga., for libelant.

Geo. C. Bedell, of Jacksonville, Fla., for the Volunteer.

John E. & Julian Hartridge, of Jacksonville, Fla., for the South Jacksonville.

CALL, District Judge. This is an action brought by the Savannah-New York Transportation Company, owners of the barge Chehaw, against the tug Volunteer and ferryboat South Jacksonville, on account of a collision on the 29th of September, 1919, while said barge was being towed by the Volunteer, between said barge and the ferryboat South Jacksonville. A cross-libel was filed by the Jacksonville Ferry & Land Company, owners of the ferryboat, against the tug Volunteer and the barge Chehaw, seeking to recover for damages received by the ferryboat in the collision.

There can be no question of the right of the libelant to recover on its libel; the only question is from which, or both, of the respondents such recovery shall be had. This is determined by ascertaining from the testimony whether one or both of the boats libeled were guilty of negligence proximately causing the collision. This question, it seems to me, can be decided upon the testimony of Manucy, the pilot of the ferryboat, in the pilot house and having charge of the navigation of the vessel prior to and at the time of the collision.

The tug Volunteer, before daylight on the morning of September 29th, made fast to the barge on her port quarter, above the bridge across the St. Johns river, came through the draw, and was proceeding down the river in an easterly direction with her tow. The ferryboat left her slip on the south side of the river, proceeding to her slip on the north side. According to the testimony, no whistles were blown by

either boat, except the long blast required by the pilot rules, upon a boat leaving her berth. The wind was north-northeast, and the tide on the south side of the river was ebbing, but not strong, about high water slack. All the vessels had their proper lights burning; the tug showing the regulation towing lights.

[1] According to Manucy, the ferryboat came out of the slip and headed up the river, about northwest, in order to allow for the set of the ebb tide and also, I apprehend, because the location of the slip on the north side is a little to the west of the slip on the south side. In any event, the ferryboat, after coming out of the slip, showed her green light to the persons on the tug and barge, and this continued to show until Manucy put his wheel to starboard, thus turning the ferryboat to enter her slip upon the north side of the river, when her red light showed. It was then for the first time that Manucy discovered the proximity of the tug and tow. After the ferryboat was turned, and the red light shown, and the discovery of the tug and tow by Manucy, everything possible to avoid a collision seems to have been done on the tug and ferryboat. A consideration of the courses the tug and ferryboat were on when each was showing the green light convinces me that the cause of the collision was the failure of the pilot on the ferryboat to see the lights on the tug and barge, and that this failure was negligence, without which there would have been no collision.

It is sought to fasten negligence upon the tug, because she sounded no whistle indicating that she intended passing to either starboard or port. This claim I do not think tenable. It was natural for the men upon the tug and barge, seeing the ferryboat come out of her slip and head up the river, showing her green light, to have concluded that she expected to pass astern of the tug and barge to reach her slip. That this is reasonable is shown by Manucy's own testimony, where he says: "In fact, I would have been in better position to have made my slip." There was no duty resting upon the master of either boat to sound his whistle when approaching another vessel, each showing the same colored light, and this was the case in the present instance, until the ferryboat turned to starboard and headed for her slip on the north side. Then such whistles would have been worse than useless.

Again, it is said that the tug should have sounded her whistle when coming through the draw; but this position is not tenable. The rule to which reference was made contemplates an entirely different surrounding then existed in the instant case.

[2] I find that the cause of the collision was the failure to maintain a proper lookout on the ferryboat, which would have discovered the position of the tug and barge, and therefore the ferryboat must respond to the damage resulting from said collision to the barge.

What I have heretofore said disposes of the cross-libel filed herein.

A decree against the ferryboat South Jacksonville in favor of the libelant, and dismissing the libel against the Volunteer, will be entered.

An order dismissing the cross-libel against the Volunteer and barge will be entered.